LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
JOY STEPHENSON-LAWS    (SBN 113755)
RICHARD A. LOVICH    (SBN 113472)
KARLENE J. ROGERS-ABERMAN    (SBN 237883)
DAVID F. MASTAN    (SBN 152109)
BARBARA V. LAM    (SBN 231073)
303 N. Glenoaks Blvd., Suite 700
Burbank, CA 91502
Telephone:  (818) 559-4477
Facsimile:    (818) 559-5484

No Filing Fee Required Per Gov't Code § 6103

Attorneys for Plaintiff
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, on behalf of University of California, Irvine Medical Center aka UCI Health

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a public trust corporation, on behalf of University of California, Irvine Medical Center aka UCI Health,<br><br>            Plaintiff,<br><br>    v.<br><br>HUMANA HEALTH PLAN OF CALIFORNIA, INC., a California corporation; HUMANA INSURNACE COMPANY, a Wisconsin corporation; and, DOES 1 THROUGH 25, INCLUSIVE,<br><br>            Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES FOR:<br><br>1.    IMPLIED CONTRACT<br><br>2.    *QUANTUM MERUIT* |

////

FC 26059                                  - 1 -    COMPLAINT FOR DAMAGES

# PARTIES

1. Plaintiff The Regents of the University of California (the "Regents") is a public trust corporation established and recognized pursuant to the Constitution of the State of California, Article 9, section 9, with full powers of organization and government. The Regents is authorized to administer various medical facilities within the University of California system, including the University of California, Irvine Medical Center aka UCI Health ("UCI Health") (Regents and UCI Health shall be collectively referred to as "UCI Health"). UCI Health has its principal place of operation in the city of Orange, county of Orange, California. UCI Health provides medical treatment to patients.

2. Defendant Humana Health Plan of California, Inc. ("HCA") is a corporation organized and existing pursuant to the laws of the State of California. HCA has its principal place of business in the city of Irvine, county of Orange, state of California. Among other things, HCA is in the business of arranging for the provision of health care services to its enrollees and/or paying for the provision of health care services to its enrollees and/or paying for or reimbursing part of all of the costs for those services.

3. Defendant Humana Insurance Company ("HIC") is a corporation organized and existing pursuant to the laws of the State of Wisconsin. HIC is registered with the California Secretary of State to conduct business in California. HIC has its principal place of business in the city of De Pere, county of Brown, state of Wisconsin. Among other things, HIC is in the business of arranging for the provision of health care services to its enrollees and/or paying for the provision of health care services to its enrollees and/or paying for or reimbursing part of all of the costs for those services.

4.   UCI Health is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants Does 1 through 25, inclusive, and therefore sues such defendants by such fictitious names. UCI Health will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

5.   HCA, HIC, and Does 1 through 25, inclusive, shall be collectively referred to as Defendants.

6.   Defendants, and each of them, at all relevant times, have transacted business in the State of California.  The violations alleged within this complaint have been and are being carried out in the State of California.

7.   At all relevant times each of the defendants, including the defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary, and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

## COMMON FACTUAL BACKGROUND

8.   UCI Health is informed and believes and thereon alleges that at all relevant times, a patient with Subscriber ID **213 ("**Patient C**")[1] was enrolled

---

1.   UCI Health has limited the disclosure of patient identification information here pursuant to the privacy provisions of the federal Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320(d) *et seq.*, and the California Constitution, art. 1, § 1.

FC 26059                                                  - 3 -        COMPLAINT FOR DAMAGES

1  in a Medicare managed care plan sponsored and/or administered by Defendants.

2

3        9.      On July 10, 2019, **Patient C** presented to UCI Health's

4  emergency department; accordingly, UCI Health rendered medically necessary

5  treatment to **Patient C** through July 11, 2019.

6

7        10.     On July 23, 2019, Defendants authorized the medically

8  necessary services rendered to **Patient C** with authorization No. 118842009.

9

10      11.     UCI Health's usual and customary charges for the treatment of

11 **Patient C** amounted to $35,870.42, which UCI Health timely and properly

12 submitted to Defendants and/or its agent, for payment by Defendants.

13

14      12.     Despite appeals thereafter, Defendants failed to pay UCI Health

15 the proper Medicare reimbursement amount for authorized medically necessary

16 treatment to **Patient C**, thus, leaving a balance owed of $9,680.05.

17

18      13.     UCI Health is informed and believes and thereon alleges that at

19 all relevant times, a patient with Subscriber ID **081 ("**Patient M**") was enrolled

20 in a Medicare managed care plan sponsored and/or administered by Defendants.

21

22      14.     Prior to treatment, on June 22, 2018, Riverside Medical Clinic,

23 on behalf of Defendants, authorized UCI Health to render the medically necessary

24 services to **Patient M** and provided authorization No. 2284793.

25

26      15.     From June 22, 2018 through and including June 24, 2018, UCI

27 Health provided authorized medically necessary treatment to **Patient M**.

28

FC 26059                - 4 -    COMPLAINT FOR DAMAGES

1    16.    UCI Health's usual and customary charges for the treatment of **Patient M** amounted to $85,218.90, which UCI Health timely and properly submitted to Riverside Medical Clinic for payment. Thereafter, Riverside Medical Clinic informed UCI Health to submit the claim directly to Defendants for payment. Accordingly, UCI Health timely and properly submitted its claim for **Patient M** to Defendants.

17.    Despite appeals thereafter, Defendants failed to pay UCI Health the proper Medicare reimbursement amount for authorized medically necessary treatment rendered to **Patient M**, thus, leaving a balance owed of $85,218.90.

18.    UCI Health is informed and believes and thereon alleges that at all relevant times, a patient with Subscriber ID **150 ("**Patient O**") was enrolled in a PPO health plan sponsored and/or administered by Defendants.

19.    Prior to the services, on July 31, 2018, Defendants and/or its agent authorized UCI Health to render the medically necessary services to **Patient O** and provided authorization No. 1076855443.

20.    Accordingly, from August 1, 2018 through and including August 6, 2018, UCI Health rendered authorized medically necessary treatment to **Patient O**.

21.    UCI Health's usual and customary charges for the treatment of **Patient O** amounted to $75,157.63, which UCI Health timely and properly submitted to Defendants and/or its agent.

22.    Despite appeals thereafter, Defendants failed to pay UCI Health

1  the proper reimbursement amount for authorized medically necessary treatment to
2  **Patient O**, thus, leaving a balance owed of $57,945.58.

4      23.    As a direct and proximate result of Defendants' misconduct,
5  UCI Health has suffered damages in the amount of $152,844.53.

## **FIRST CAUSE OF ACTION**
(Breach of Implied Contract)

(Against Defendants)

11     24.    UCI Health incorporates by reference and re-alleges paragraphs
12 1 through 23 here as though set forth in full.

14     25.    As stated above, **Patient C** was an enrollee of Defendants'
15 Medicare managed care plan and UCI Health rendered emergency related treatment
16 to **Patient C**.

18     26.    Under federal and California laws ,UCI Health and Defendants
19 have an implied contract for reimbursement at the full Medicare rate for emergency
20 services rendered to Defendants' Medicare managed care plan's enrollees. The
21 Emergency Medical Treatment and Active Labor Act (EMTALA) requires UCI
22 Health to provide **Patient C** with medically necessary emergency treatment
23 without regard to the patient's insurance or ability to pay. Corresponding, managed
24 care plans, such as Defendants, have an obligation to pay for emergency related
25 treatment rendered to its enrollees. (*See* 42 CFR § 438.114; and California Health
26 and Safety Code §1371.4(b) and (j).) Accordingly, UCI Health and Defendants
27 implicitly agreed and understood that: when UCI Health rendered medically
28 necessary emergency treatment to **Patient C**, who was a Medicare enrollee of a

Defendants' Medicare managed care plan; UCI Health would submit its claims for such services to Defendants and/or its agent; and that Defendants would pay UCI Health at the full Medicare rate.

27. Also, as is the custom and practice in the health care industry, sometimes hospitals and health plans form contracts through their conduct even though they do not exchange express promises, contracts under which a hospital agrees to render medically necessary services, including emergency services, supplies and/or equipment to a member of a health plan; and in return, the health plan agrees to pay for such health care at the hospital's usual and customary charges in place at the time of service. Such implied contracts can arise from a variety of manifested conduct which includes, among other things, when a hospital calls up the health plan: (a) to ask for authorization of care for a particular member of that health plan and the plan authorized the services to be rendered its enrollees, or (b) when a hospital renders medical care to a health plan's enrollee in an emergency situation.

28. As to **Patient M**, prior to the treatment rendered by UCI Health to **Patient M**, through custom and practice, UCI Health and Defendants implicitly agreed and understood that: when Defendants authorized and provided authorization No. 2284793; UCI Health would render medically necessary services to **Patient M**; UCI Health would submit its claims for such services to Defendants and/or its agent; and that Defendants would pay UCI Health at the full Medicare rate for treatment rendered to a Medicare enrollee of a Defendants' Medicare managed care plan.

29. UCI Health reasonably relied on Defendants' promises to fully pay for the services to **Patient M**. Also, it was understood between UCI Health, on

one hand, and Defendants, on the other hand, that Defendants would pay at the full Medicare rate for such medically necessary treatment; in exchange for UCI Health's performance of said medically necessary services.

30. As to **Patient O**, prior to the treatment rendered by UCI Health to **Patient O**, through custom and practice, UCI Health and Defendants implicitly agreed and understood that: when Defendants authorized and provided authorization No. 1076855443; UCI Health would render medically necessary services to **Patient O**, who was a PPO enrollee of a Defendants' health care plan; UCI Health would submit its claims for such services to Defendants and/or its agent; and that Defendants would pay UCI Health at UCI Health's usual and customary charges, which is the reasonable value of the services rendered.

31. UCI Health reasonably relied on Defendants' promises to fully pay for the services to **Patient O**. Also, it was understood between UCI Health, on one hand, and Defendants, on the other hand, that Defendants would pay for such medically necessary treatment at UCI Health's usual and customary charges, which is the reasonable value of the services rendered; in exchange for UCI Health's performance of said medically necessary services.

32. At all relevant times, by its words and/or conduct, Defendants authorized the medically necessary services rendered to **Patient C**, **Patient M**, and **Patient O**. By such conduct, it was understood between UCI Health and Defendants that, in exchange for UCI Health providing medically necessary treatment to **Patient C**, **Patient M**, and **Patient O**; Defendants would pay UCI Health at the understood reimbursement rates: **Patient C** (full Medicare rate), **Patient M** (full Medicare rate), and **Patient O** (UCI Health's usual and customary charges, which is the reasonable value of the services rendered).

33. At no time did Defendants instruct UCI Health to stop the medical services or coordinate with UCI Health to transfer **Patient C**, **Patient M**, and/or **Patient O** to another facility.

34. At all relevant time, UCI Health and Defendants had entered into an implied contract as demonstrated by custom and practice, as well as, the actions and conduct of Defendants.

35. UCI Health rendered all medically necessary services to **Patient C**, **Patient M**, and **Patient O,** as well as performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the above-described implied contract.

36. However, Defendants breached the implied contract by failing and refusing to fully pay UCI Health for providing care to **Patient C**, **Patient M**, and **Patient O**, despite demands thereof.

37. As a direct and proximate result of Defendants' breach of the implied contract, UCI Health has suffered damages in an amount to be proven at trial according to proof but which amounts to at least $152,844.53, exclusive of interest.

## SECOND CAUSE OF ACTION

(*Quantum Meruit*)

(Against Defendants)

38. UCI Health incorporates by reference and re-alleges paragraphs 1 through 23 here as though set forth in full.

1  39. As to **Patient C**, UCI Health is informed and believes and thereon alleges that Defendants instructed its enrollees, including **Patient C,** to seek medical services at the nearest emergency hospital if they believe they are experience an emergency medical condition. By such instructions Defendants is requesting the emergency hospitals, including UCI Health, to provide the medically necessary services, including emergency services, supplies and/or equipment to its enrollees, including **Patient C**.

40. Thus, when UCI Health rendered medically necessary services, including emergency services, supplies and/or equipment to **Patient C**, Defendants benefited because UCI Health thereby assisted Defendants in meeting its obligation to arrange for and/or pay for medically necessary services to its enrollees, including **Patient C**.

41. In addition, as to **Patient C**, **Patient M**, and **Patient O**, Defendants own conduct manifested an implicit request for UCI Health to render medically necessary services, including emergency services, supplies and/or equipment to its enrollees: first, Defendants instructed its enrollees (including **Patient C**) to seek emergency relates medical services at the nearest emergency hospital; second, Defendants verified insurance eligibility information for **Patient C, Patient M,** and **Patient O** under Defendants' health plans; third, Defendants authorized the medical services for **Patient C, Patient M,** and **Patient O** and agreed to pay for the medically necessary treatment; and fourth, Defendants failed to make arrangement to transfer **Patient C, Patient M,** and/or **Patient O** to another hospital. By such conduct, it was understood between UCI Health and Defendants that, in exchange for UCI Health providing medically necessary services, including emergency services, supplies and/or equipment, Defendants would pay UCI Health at the full amount due: **Patient C** (Medicare rate), **Patient M** (Medicare rate), and

**Patient O** (UCI Health's usual and customary charges, which is the reasonable value of the services rendered).

42. Accordingly, UCI Health rendering of medically necessary services, including emergency services, supplies and/or equipment to **Patient C**, **Patient M**, and **Patient O** was intended to, and did, benefit **Patient C**, **Patient M**, and **Patient O**; and therefore Defendants.

43. Defendants benefited from UCI Health rendering such medically necessary treatment to **Patient C**, **Patient M**, and **Patient O** because, in part, such treatment helped to discharge Defendants obligations to **Patient C**, **Patient M**, and **Patient O** to pay and/or otherwise arrange for delivery of health care to them pursuant to the Knox-Keene Health Care Service Act of 1975, Cal. Health & Safety Code §§ 1340, *et seq.*

44. Relying on Defendants' words and conduct, UCI Health rendered medically necessary treatment to the **Patient C**, **Patient M**, and **Patient O** with the expectation that UCI Health would be properly paid for such treatment.

45. Within the past two years, UCI Health demanded Defendants to fully pay for the medically necessary to **Patient C**, **Patient M**, and **Patient O**. But Defendants either paid a small portion or paid nothing on the claims, which leaves an outstanding amount due of $152,844.53 for the medically necessary treatment rendered to **Patient C**, **Patient M**, and **Patient O**.

46. As a result of Defendants' misconduct, UCI Health has suffered damages in an amount to be proven at trial according to proof but which amounts to at least $152,844.53, exclusive of interest.

# **PRAYER FOR RELIEF**

47. WHEREFORE, UCI Health prays for judgment as to all Defendants as follows:

For all causes of action:

    a. for the principal sum of $152,844.53;

    b. for interest on such principal sum at the rate of fifteen percent (15%) *per annum*, pursuant to Cal. Health & Safety Code § 1371; or, in the alternative, for interest on such principal sum at the rate of ten percent (10%) *per annum*, pursuant to Cal. Civ. Code § 3289; and,

    c. for such other and further relief as the Court deems just and proper.

Dated:  September 11, 2020

                                        LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.

                                        */s/ Barbara V. Lam*

                                        BARBARA V. LAM
Attorneys for
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, on behalf of University of California, Irvine Medical Center aka UCI Health

FC 26059         - 12 -     COMPLAINT FOR DAMAGES